UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENNIS L. TAYLOR,

   Plaintiff,

  v.

HAL NEDERLAND N.V., et al.,

   Defendants.

CASE NO. C04-167RSM

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  This matter is again before the Court for consideration of defendants' motion for summary judgment on the issue of liability (Dkt. # 14). On September 8, 2005, the Court determined that it was appropriate to defer ruling on the motion until the Court, Chief Judge Lasnik presiding, had issued a ruling following a <u>Daubert</u> hearing scheduled for September 21, 2005, in a companion case, <u>Lamprecht v. HAL Nederland N.V.</u>, C04-166RSL. The parties were given an opportunity to file supplemental briefs addressing the effect of Judge Lasnik's ruling on the liability issue in this case. Having considered the supplemental memoranda, together with the memoranda, declarations, and depositions filed previously in this case, the Court now DENIES defendant's motion for summary judgment.

  The facts and prior proceedings are well known to the parties; they are not restated herein except as necessary to the resolution of this matter. Briefly stated, this case arises from a malfunction in the steering component of a cruise ship, the S/S RYNDAM, upon which plaintiff was a passenger. It caused the ship to turn sharply to starboard and heel over, tilting the decks. Plaintiff, who was seated in the dining room at the time, stood up in response to the tilt and was thrown down, breaking his hip and wrist.

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1

Plaintiff asserts that his injuries were caused by defendants' negligence in operating the vessel.

In his initial order on summary judgment in the <u>Lamprecht</u> case, Judge Lasnik granted defendant's motion "as to all of plaintiff's theories of negligence except the theory proposed by Dr. Wilson, that the second mate's reaction to the mechanical failure violated the STCW [Standards of Training, Certification and Watchkeeping] in failing to reduce speed and activate the NFU [non-follow-up tiller] within fifteen seconds after the failure was discovered." <u>Lamprecht v. HAL Nederland N.V.</u>, C04-0166RSL, Dkt. # 29. A <u>Daubert</u> hearing was scheduled to consider the admissibility of Dr. Wilson's opinion. Following the hearing, Judge Lasnik ruled that Dr. Wilson's opinion was not excessively speculative and was "based on sufficient facts and data to warrant its admissibility." <u>Lamprecht</u>, Dkt. # 29. Finding that issues of fact remained regarding the second mate's response to the steering malfunction, the Court denied defendant's motion for summary judgment.

In the supplemental briefing, plaintiff urges this Court to adopt Judge Lasnik's ruling on Dr. Wilson's opinion. Plaintiff has also withdrawn one witness, Captain Levine, as well as all theories of negligence other than the one based on Dr. Wilson's opinion. This witness and these other theories of negligence had already been rejected from the <u>Lamprecht</u> case by Judge Lasnik's earlier ruling on summary judgment. Due to the deferral of the ruling in this matter, the Court had not yet addressed these theories of negligence, but need not do so now as plaintiff's withdrawal renders them moot.

Judge Lasnik's ruling in <u>Lamprecht</u> left a single liability issue for trial, "regarding plaintiffs' allegation that the second mate's reaction to the mechanical failure violated the STCW in failing to reduce speed and activate the NFU shortly after the failure was discovered." <u>Lamprecht</u>, Dkt. # 32. In their supplemental memorandum, defendants contend that this Court should not adopt Judge Lasnik's ruling as to the admissibility of Dr. Wilson's expert opinion and the resulting factual issue surrounding the second mate's actions. Defendants argue that there is evidence before this Court which was not before Judge Lasnik, and that evidence renders Mr. Wilson's opinion irrelevant on the issue of causation. "Specifically, the Declaration of Paul Wagner in this case establishes that the Second Mate could not have reduced the vessel's speed in time to prevent plaintiff's injuries from occurring." Defendants' Supplemental Memorandum, p. 5.

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1

1    Paul Wagner is a marine engineer with considerable experience in research and design of marine
2    steering systems. Declaration of Paul Wagner, Dkt. # 15, p. 2. As defendants' expert, he filed
3    declarations in both this case and in <u>Lamprecht</u>, presenting the following timeline which he developed "to
4    a reasonable degree of engineering probability":

5        1819: Switch to hand steering mode in preparation for rounding a turning buoy.

6        1820: A small rate of turn was recorded with a small change in heading. The relay
     welding likely occurred 10-15 seconds before and would have been without notice or
7    warning.

8        1820 + 10 seconds: The Second Officer noticed a heading discrepancy, which is not an
     unusual event at sea and would not be a reason for suspecting a problem, let alone a
9    problem with the steering system itself; Second Officer interrogated the AB who was
     steering and received advice that the rudder was not responding.
10
         1820 + 30 seconds: The Second Officer then looked at the rudder angle indicator which
11   showed midships rudder, but also noted that the vessel was turning to starboard. This is
     the first point at which some type of a problem with the steering system would be suspected.
12   At this point, he Second Officer properly told the other AB to get the Master and went back
     to the steering console where he stood behind the wheel to observe steering response to
13   further diagnose the nature of the problem.

14       1820 + 45 seconds: The Second Officer commanded port rudder, but the rudder did not
     respond. He then selected the steering mode back to autopilot and then returned to manual
15   wheel, believing that the steering mode had not transferred correctly. By this time, significant
     heel and angular acceleration would have developed such that the accident complained of—falling
16   over in a chair—would have occurred.

17       1821: A peak rate of turn was recorded. Maximum acceleration occurs at the maximum rate of
     turn.
18
     <u>Lamprecht</u>, C04-166RSL, Dkt. # 15, pp. 2-3; <u>Taylor</u>, C04-167RSM, Dkt. # 15, pp. 7-8.
19
         In <u>Lamprecht</u>, Mr. Wagner subsequently opined that
20
         [p]assengers would have fallen out of their chairs before the maximum rate of turn
21   occurred. Clearly, such would have happened in a very short period of time after the
     relay welded. According to my analysis, it would have occurred approximately 15
22   seconds after the vessel's bridge could have reasonably known that there was a problem
     with the steering system, and therefore concurrent with actions taken by the crew to
23   diagnose and correct the steering failure. No sooner response from the crew was
     reasonably possible.
24
     Reply Declaration of Paul Wagner, C04-166RSL, Dkt. # 20, p. 4. Thus, Mr. Wagner's opinion that
25
     earlier action by the crew could not have averted the heel-over was already before the Court when Judge
26
     Lasnik found Dr. Wilson's contrary opinion admissible, creating an issue of fact. *See*, Supplemental
27

28   ORDER DENYING DEFENDANTS' MOTION
     FOR SUMMARY JUDGMENT- 1

Order Regarding Motion for Summary Judgment, C04-166RSL, Dkt. # 32, p. 2.

Nevertheless, defendants argue that Mr. Wagner has offered additional information in this case, "which allows this Court to completely evaluate the relevance of Dr. Wilson's sole surviving opinion to the ultimate issues of causation and liability . . . " Defendant's Supplemental Memorandum, p. 5. The additional information cited by defendants is found in the last paragraph of Mr. Wagner's declaration in this case:

> Marc Wilson seems to believe that the crewmembers should have reduced the vessel's speed as soon as a problem was detected. But a reduction in speed would not have significantly reduced the vessel's heel for at least a minute after the command would have been given. Changing the pitch of the vessel's propellers to bring the speed to zero would take at least 15 seconds, and then water resistance against the hull would gradually reduce the vessel's significant forward momentum. Slowing the vessel would have been a lengthy process and would have only reduced the vessel's heel after the plaintiff's injury occurred.

Declaration of Paul Wagner, Dkt. # 15, p. 12. This is opinion, not information. Neither is it "new" as described by defendants; it is not significantly different from the opinion, quoted above, that was before Judge Lasnik and considered by him in his ruling on summary judgment. Moreover, it misstates both the evidence and Dr. Wilson's opinion. Mr. Wagner stated in his timeline, set forth above, that within forty-five seconds after the initiation of the turn, the injury, described as "falling over in a chair," would already have occurred. Plaintiff Taylor, however, did not fall over in his chair; he stood up and then lost his balance due to the tilt of the vessel. Mr. Wilson's opinion was that plaintiff's injury could have been averted if the second mate had reduced speed within a short time of the occurrence of the steering malfunction, not within the **detection** of that malfunction. As stated by Judge Lasnik, "Dr. Wilson testified that if the crew had reduced the vessel's speed within a minute after the malfunction, the list would have been barely noticeable to passengers." Supplemental Order on Summary Judgment, C04-166RSL, Dkt. # 32, p. 2. Finally, Mr. Wagner is an engineer, not a seaman; he has not stated any basis for his opinions, stated in the timeline, as to when the crew could or would have noticed a problem, and how they should have responded. Nor has he addressed the probable effect on the vessel's tilt had the crew immediately reduced speed at 1820, when the vessel began to change course; instead he opines that a reduction in speed ordered thirty seconds later, at 1820 + 30 seconds (when according to him the

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1

problem could first have been detected), would not have averted the tilt and resulting injury.  This discrepancy between Mr. Wagner's opinion and Dr. Wilson's is an issue of fact for trial.

Thus, the Court declines to find in Mr. Wagner's new declaration any basis for not following Judge Lasnik's September 26, 2005 ruling in Lamprecht.   Issues of fact remain as to whether the second mate's response to the malfunction was reasonable, whether it violated the applicable Standards of Training, Certification and Watchkeeping, and whether an earlier response by the crew could have averted plaintiff's injury.  Therefore, defendants' motion for summary judgment on plaintiff's sole remaining theory of negligence is DENIED.

The Court notes that this matter is currently set for a bench trial beginning November 7, 2005.  A motion by plaintiff to consolidate this case with Lamprecht is noted for October 28, 2005.   In the event that motion is denied, the November 7 trial date will be have to be continued due to a conflict on the Court's calendar.   Accordingly, the Court now STRIKES the November 7, 2005 trial date and all associated dates for pretrial preparation.  New dates shall be set, if appropriate, following the Court's ruling on the motion to consolidate.

DATED this    18    day of   October   , 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1